All rise. Hear ye, hear ye. This Honorable Appellate Court for the 2nd District of California, Annual Justice Susan F. Hutchinson presiding. Please be seated. Next case, Your Honor, Number 2110774, Jennifer G. Sandoz, plaintiff-appellant, United Services Automobile Association, defendant-appellee. Are you the plaintiff-appellant, Mr. Mark Raser? Are you the defendant-appellate, Ms. Edna McClain? Now we're going to close the doors so that we can all see. Ann, Mr. Raser, when you're ready. Thank you, Your Honor. May it please the Court, Honorable Justices, Counsel, My name is Mark Raser, and I have the privilege of representing Jennifer Sandoz, the administrator of her parents' estates. This matter comes before... I'd like to reserve five minutes for rebuttal. That's fine. This matter comes before the Court regarding an insurance policy coverage dispute. Specifically, the amount of underinsured motorist coverage available to each estate under their private automobile insurance policy issued by USAA. The issue in this case is clear. Does the policy unambiguously provide... unambiguously provide, by its express terms, the result propounded by the defendant-appellee? We submit the resounding answer to that question is no. I have taken the liberty, as I did at the trial court, of blowing it up. I realize it's a little more difficult. Can't see. I have also exhibits. Would the Court like a copy of the relevant language, or do they have the briefs? I think that's in your... We have the briefs. Yes, okay. And we have some other documents before us that I think cover it. If we find we do not, then maybe we could ask you to... Thank you, Your Honor. I'll move on. There are two relevant provisions at issue under subsection C, which is uninsured underinsured motorist, which are at issue in this case. And we believe when these provisions are read and construed as a whole, as must be done, USAA's policy is a policy designed to treat each person, individually and separately, with a $500,000 cap on USAA's exposure, as we have implemented in our position. We do not believe, as appellee argues, that the $500,000 is a limitation on the recoverable amount to the estates in this claim. But you're... All right. In your appellate argument, you're saying that your client is due an additional $100,000, so it does seem to appear that you are relying on that figure for something. Yes. So the question is what? Yes, we believe that under the express terms of this policy, and I will get to it in a moment, the cap that USAA owes is $500,000. It's expressly defined as... Each accident limit is expressly defined as our maximum limit of liability for all damages from bodily injury resulting from any one accident. So we say that it's a $300,000 each person policy with a limitation of $500,000 on the maximum USAA has to pay, not, as the trial court found, and as counsel will argue, the limitation on what the plaintiffs can recover. That's the distinction. So there are two relevant provisions that we're going to be talking about today, the limit of liability. As I've already said, the relevant provision here specifically states, subject to this limit for each person, the limit of liability shown in the declarations for each accident for underinsured motorist coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. And so it is therefore our position that the per-person limit of $300,000 applies to each person that's covered, with the $500,000 simply being a cap that can be recovered, not the maximum the plaintiff can recover. Well, the $300,000 and $300,000 is 6, and somehow then you are allowing that there is, and there should be credit against whatever the figure is, but your argument is not so much that the $500,000, but it's the $600,000 that's the issue. Yes, we believe when you do the analysis consistent with this policy, you would come out with a result of $300,000 for the estate of Mrs. Greco, $300,000 for the estate of Mr. Greco. We then say that we then cap up under $500,000, so that's why our claim is they owe their entire policy of $500,000. Which they've tendered. No, they've tendered $400,000. Well, okay. They've tendered $400,000 of the $500,000, and we believe we're entitled to that additional $100,000, and that's what we're here for today. But, and are you conceding or are you agreeing that they are entitled, they being UA, whatever their initials are, colleges, that they're entitled to credits or less amounts actually recovered under the other policies? I agree that there is a set-off reduction in this policy. I agree, and I've outlined it in my brief how we come to our analysis, that they're entitled to set off and reduce according to their policy, which leads to our result, not their result. So, yes, I do believe, Your Honor, to answer your specific question, they do get a credit as you've used the word, I've used it in my brief, as reduction or set-off. The matter of the question, though, is what is the set-off that they're entitled to, and how do we arrive at that set-off? Is that ambiguous as well? We believe that is ambiguous, yes, it is. All right, so now you're citing two ambiguities. Yes. The limits of liability section and the underinsured motorist section, we believe we've interpreted it properly, but based on how they've interpreted it, there is clear ambiguity in both of these sections. And what's important to note from our perspective is if either of these two provisions are found ambiguous, we win. All right, Counselor, do you have copies of that exhibit? I do. Thank you. May I approach these? Yes. You can just give them to us. We'll let Mr. Mangan catch a breath. Counsel, I'm tendering. Thank you. And that is an exact copy without the yellow and things of that nature? Without the highlighting? It is. It is, Your Honor. Thank you. I want to make sure before I move. It is not. It is not. And let me just explain. This provision and the first provision on the reduction, nobody argues, not even USAA, is applicable. That's removed from this document. May I approach? Yes. Thank you. You're welcome. I apologize. Thank you. You're welcome. While you're returning, can I ask you a hypothetical? Sure. If Kim and Posey, the two tort freezers in this case, had liability policies that were the exact same amount as the underinsured policy of your client. Okay. It would be a $300,000, $500,000 for liability. So they would be limited then to $500,000 per incident, per accident. If they had the exact same policies, this would not be an underinsured motor vehicle case because they'd have the exact same policy. But the estate then would receive a million dollars. Well, if both tort fees, I guess I would dispute that, Your Honor, with all due respect. If both had 300, 500 policies, that's true. We would collect a million. Assuming that the policy was written as, for example, Oberlin is written or Erie is written, but not if it's identical to this policy. If it's identical to this policy, it would be. Yes, it would be because they're capped out at $500,000. That's absolutely accurate. I would agree with that. So if the estate's going to get a million dollars if they have the exact same policy as the underinsured motor vehicle that your clients had, that the decedents had, then how does this jive with the policy of an underinsured motor vehicle coverage of the statute, which is to put the people in the exact same position as if they had that same coverage? It is true that that is the intent of the code. But what we are looking at here is the four corners of a contract. We all know that this policy is a contract between Mr. Greco and USAA. We're looking at the four corners of this contract to determine what they're entitled to. Because even the statutory definition under the code limits it to as defined in the policy. They talk about underinsured motorist coverage, and then they refer to it as as defined in the policy. And what I submit is that based on the policy they created, they often were entitled to the additional $100,000. That is my position in this case. And the language, we can disregard the language in Oberlin and Erie because the policies are different. The language that is cited in Erie, you cite in Oberlin that this insurance was not intended to allow the insured to recover more than the amount of coverage provided under the underinsured motor vehicle. You're talking about in Oberlin? No, it's in Erie, citing Oberlin. Yes. Yes. Well, let me, if I might explain. The answer to that is yes. And you actually jumped to the next section of my argument. Let's look at Oberlin, which counsel relies on in their brief for the proposition that this limited liability, what they say in this case is that you automatically apply to each accident limit when two or more persons are involved. So they say their answer is you apply the $300,000 when one person is involved. When there's two or more people involved in an accident, you jump to the $500,000 and that's how they get to their analysis. Unfortunately for USAA, nowhere in this policy doesn't say that. It defines each accident as, and again I say it, our maximum limit of liability for all damages for bodily injury resulting from an accident. It doesn't say, now let me jump to Oberlin. It doesn't say any one accident. Yes, but it doesn't. And that's where the limitation comes in. It doesn't talk about how many people in the accident. Right, when it is to be applied. I say it's only a limitation, a cap on their exposure, which I invoke in this case under the $600,000 down to $500,000. What about though, when you get to these limits are the most we will pay regardless of the number of covered persons? Yes, absolutely, Your Honor. That provision that you're referring to. That's the sentence immediately after the one you just read. It absolutely is. And it says these limits are the most we will pay regardless of the claims made, covered persons, vehicles, or premiums. That's the standard, what we refer to as the anti-stacking provision of the policy. That has nothing to do with up above. And if it does, it applies to both the first section and the second section. Because it says these limits, meaning each person and each accident. I want to go back to Oberlin. This is what the language of Oberlin is that USAA relies on. It says, subject to the limit for each person. The limit for each accident is, and here's the key word, the maximum for bodily injuries sustained by two or more persons in any one accident. Clear, concise, unambiguous. Unlike our policy. The second issue I'd like to touch upon is this. It also, when we mention Erie, I've compared on this page Erie, that they rely on very heavily. We believe Erie is factually distinguishing. Erie says the per accident for one auto is the most we will pay for damages arising out of bodily injury or death to all persons, more than one. Resulting from any one accident. Now notice Erie uses persons, USAA uses damages. And that's why we believe it's a cap. Now, it's clear that Erie and Oberlin, or I may not be saying it correct, but are more precise. But does that mean that this is ambiguous? And this is the policy we're really looking at today. You are absolutely correct. And the answer to that question is reasonableness. The question is this. What I have read here, and as I cite in my brief, this limited liability section, is my interpretation of that, that's presented to this court, reasonable. For if it is a reasonable reading of this policy, it is by definition, and by the case law that I have cited, ambiguous. Because if it is entitled to more than one reasonable interpretation, it is by definition ambiguous. And we say that our position on this, what we've set forth, is a reasonable reading of this. Conversely, I see nothing in this language, and I would invite counsel to come up here to tell us where it says that that provision in each accident automatically applies when two or more persons are involved in an accident. Now I'd like to go to the reduction in the set-off, and if I might say, this is the most troublesome aspect of this policy, and frankly, I think it's case dispositive. And I say that because even if this court were to find that the limited liability section is as USAA says it is, and there is no ambiguity, if you find that our interpretation of subparagraph 2 is reasonable, then we get the additional $100,000. Now let me explain. There is no dispute in this case, the parties agree, that subsection 2, because there are two paragraphs under the set-off, subsection 2 applies. And what does it say? It says, if there is a tentative settlement, and we had one with the torque feezers, and we give the covered person consent to set up the limit of liability for each person and for each accident for underinsured motorist coverage shall be reduced by the limit of liability for bodily injury liability coverage applicable to the owner or operator of the underinsured motor vehicle. We think it's clear that what you're doing is you're reducing by the limits of liability from a covered person, singular, not plural. Now, what we say in this case is this, you take each person and you apply what the set-off is on an individual basis. So as I put in my brief, I'll just take the Kim example, Mr. Greco is entitled to $300,000 each person limit. He received $100,000, the policy limit, from Mrs. Kim's State Farm, giving him $200,000 under this policy. So we put $200,000 on the shelf. We then go to posing, Mr. Greco's $300,000, again, each person limit, minus the $200,000 he received from posing, leaving $100,000. Therefore, he gets $300,000, the estate does. Same analysis for Mrs. and then when you couple the $300,000 and the $300,000, that exceeds the cap of $500,000 and therefore we collect only $500,000, not $400,000. We believe that is a fair limit. Because the set-off provision says covered person in it, is that the phrase that we're keying on? No, it's two things. Number one, we believe in covered person, that's one phrase. But then, what are we reducing from a covered person? What does it say? It says reduced by the limit of liability for bodily injury liability coverage. Now let's be clear about this. Mrs. Kim had a 100-300 policy. What do we want to reduce it by for each person? $100,000. Because we received the limits. You know what they want to use as a number? They want to use $200,000. Again, I invite counsel to explain how you get to commingle offers made to two people. The estate of Mr. Greco and the estate of Mrs. Greco. And then in the aggregate, use that as a reduction. That simply is not this provision. First of all, it's not two people. But more importantly, the limits of liability are clear. It's 100-300. They admit that in their brief. Let's talk about Posey. His limits are $250,000, as Justice has pointed out, $250,000, $500,000. You know what they want to reduce it by? They want to reduce it by $400,000. Because they want to commingle the amounts paid. The amounts paid. And we'll get back to that when we're at amounts paid. I'm not disagreeing with the $400,000 though. And you can get to the $400,000 by taking $500,000 minus Oh, I've done it. Okay. Here on my paper. You can take You add up the $100,000 that they got from Allstate, the $200,000 from State Farm. Subtract that from And that's $300,000. Subtract that from $300,000 and you get $200,000 and $200,000. So that's the $400,000. Yes, that's the analysis set forth by USAA. And let's be clear what that analysis is. What they're doing is they're applying the each tax limit up here, which we've talked about. And then what they're doing is they're reducing that by commingling offers made to Mr. Greco's estate and Mrs. Greco's estate from a single tortfeasor in the aggregate and deducting that. That's not what this language says. They don't get to add what Mr. Greco and Mrs. Greco received in the aggregate and deduct that from $500,000. Well, I didn't do that and I came up with $400,000. I specifically did not do that. Okay, well can I Maybe I didn't follow and I apologize. I was writing it down as you say. The way I do the math is under this analysis is each person I'll use the $300,000 but I'll talk about the $500,000. $300,000 Now we're going to reduce by the limit of liability for a covered person, Mr. Greco. $300,000 minus 1 that leaves $200,000. I think that's clear. Now we state with Mr. Greco $300,000 each person minus 2 that he got for imposing $200,000  So you've got $200,000 and $100,000. Mr. Greco gets $300,000 not the $200,000 that your Honor mentioned. And maybe I didn't follow that. I apologize. You say the crux of this is whether it's each whether it's the set-off provision. You believe that's the crux of this thing. But you're tying that to the fact that you're applying each person as opposed to each asset. Your Honor, you're absolutely right. So we really have to look at the limit of liability portion first and foremost. Yes, I do. Yes, I do take issue with the limit of liability. But as I just started out my argument on the reduction section let me also say that if you find that $500,000 applies you still reach out a result here. Let me explain how. If you apply $500,000 here for Mr. Greco and now you subtract out $100,000 that was offered by posing, excuse me, by Kim that makes $400,000. So you've now put out he gets $200,000 under the person. So you've got $200,000 that they've paid. Now wipe the slate clean. $500,000 that you have for Mr. Greco against Mrs. Kim or Mr. Posing minus the $200,000 leaving $300,000. He gets $100,000 of that and they've paid out $300,000. So there's still $200,000 left on that policy. So the analysis I take issue with the limits of liability. But I also would say that it doesn't matter on this section because if our interpretation of this provision is accurate we believe, clearly is that either way they have to pay out their $500,000. See what the real crux here is they want to take one tort fees whether you call Posey or Kim and what they're trying to reduce is the each person the each accident limit of $500,000 by the combined number that the estate of Mr. Greco got and the estate of Mrs. Greco got. So in Kim's position they take $500,000 minus $200,000 so they get $300,000 then they take $500,000 minus $400,000 from Posey leaves $100,000. So that's how they come up with $400,000. My question is nowhere in this provision that we agree applies does it say they get to commingle aggregates from both. It simply does not say that. And as I said I would invite counsel to come up here and explain on our poster board how she arrives at that number. We don't think that can be done. Counsel, you need to summarize because the time has run for this part of the question. And I appreciate that. And we would just emphasize that if the language specifically says the limits of liability not the amounts recovered as Justice Burke said I have cited in my reply brief the appendix a number of cases that the reduction is amounts paid to anyone we protect. Clear, concise, and simple. I thank you for your time. We ask that the court reverse the trial court's decision in this matter. Thank you. Ms. McClain. May it please the court. My name is Edna McClain. I represent the defendant at the League United Services Automobile Association which I will refer to as USAA just for brevity's sake. The reason we're here today is because the appellant is asking to be put in a position over and above what its policy allows. This particular position has been discounted by the Illinois Supreme Court in the case of sole service versus country mutual insurance. And I think the Illinois Supreme Court in that case summarized the purpose and policy underlying underinsured motorist coverage very well. The public policy underlying underinsured motorist coverage is to put an insured in the same position she would have occupied if the tort fees policy limits had been the same as the insurance policy limits. It's designed to fill the gap between the claim and the amount available from the underinsured. What it is not intended to do is to allow the insured to recover amounts over and above the coverage provided in the underinsured motorist policy. Now, the Sulzer Court went a little bit further and actually gave a somewhat realistic example of how to avoid absurd results that are being requested by the appellant. Basically, what the Illinois Supreme Court said in Sulzer is the insured should not be entitled to recover more than they would be able to recover if the two tort fees have been uninsured. So, as Justice Burke mentioned earlier, if we assume that Kim and Posey were uninsured, the most they would be able to recover under the policy would be a million dollars. And that's what the appellant has received. They've received a million dollars. $600,000 from the two tort fees and USAA filled the gap by $600,000. In my opinion, no matter how you calculate it, you cannot pay more than a million under this policy. I'm not exactly sure how he's arriving at the $1.1 million amount. It just doesn't seem to be supported at all under the policy and it would actually put the appellant in a better position than they are right now. If you look at that language in the set-off reduction area there and specifically the second one and get down to UIM coverage shall be reduced by the limit of liability he's saying that there are problems with that language because it leads one to believe that it is a single person rather than as in the case with the case I keep saying the wrong name it actually mentions each person it doesn't make any difference how many people as long as each person is taken into account and here it doesn't really do that. Well I can respond to that argument pretty simply if you look at the entire provisions of the policy a covered person is defined as you or any family member any other person occupying your covered auto etc. It's not confined to one single person. Covered person includes more than one person and unfortunately the appellant cannot review provisions of a policy in isolation without reviewing the entire policy itself. So covered person is not defined as just one single covered person under the policy. Furthermore, with respect to the way the set offs were done in this case I think it is important to note that the case law specifically the plaintiffs also made similar arguments where they tried to say that the each person limit should be considered and that basically only what that one individual person received should be set off from the policy limits and the  also tried to reduce the policy limits by the combined amount that the plaintiffs received from a tort feeser. We have multiple tort feesers in this case. We look at each recovery separately. So and I hate to do  but the plaintiffs received $400,000 total. You deduct that from $500,000 you get $100,000. What's left over is $400,000 and that's what they were paid to reach a million which is the most that they would be able to recover under the policy. And I would say that the language in the policy is fairly clear. There's no reason to mention per person and per accident limits in the same paragraph for no reason at all. And I would like to point out that counsel completely omitted the last sentence of that limit of liability provision that says these limits are the most we will pay regardless of the number of covered person claims made, et cetera. There's no reason to put that language in there if what we're trying to say is the per accident limit applies when more than one person is involved in the accident. So I think that the language of the policy is pretty clear and unambiguous. Can you respond to counsel's argument that the language of the policy is actually a limitation on the liability of your company and not the amount   you have. I don't really disagree with that. Like I said, if this was an uninsured situation, the most they would be able to get would be $500,000. So I seem to think it's really a distinction without a difference. Hopefully that answers your question. I would like to also point out that counsel does not cite any case law that really supports the manner in  want to apply the set-offs in this case. And actually the case law contradicts their position. I mentioned Oberland and Erie where the plaintiffs made similar arguments about how the set-off should be applied. And the Illinois insurance code and several cases other than Oberland and Erie clearly state that the amount should be combined and reduced that the policy limit should be reduced by what the insured actually recovered from the case. So  would like to point out that the language cited here is not adequate. Is that essentially what you're saying? Essentially and I do understand. I can concede that the policy language of the state   is not adequate. And given that it's plain and ordinary meaning, substantively they mean the same thing. And are we in a position to say just because one is clearer, one policy segment is clearer, then this language is ambiguous. I believe that it is clear and plain as it's written. I understand that he wants the court to read ambiguity into the policy. However, the courts have been very clear that you should not take creative interpretation to make what is otherwise plain and ordinary ambiguous. I don't see anything within this language that is ambiguous that should lead to more than one interpretation of what it means. There's a reason the language is structured the way it is. There's a reason why we specifically talk about what per person means versus each accident. There would be no reason to make a distinction between the two otherwise. So, Your Honor, I just want to get back to the point that basically what the appellant is asking the court to do is to confer upon her a benefit of an additional $100,000 when her policy only allows her maximum recovery of a million. She's already received a million. That's the most that she should receive. We properly applied the set-offs as under the Illinois insurance code, consistent with the case law and consistent with the language of the policy. If there are no other questions, I don't really think I have anything further. Thank you. Thank you, counsel. Mr. Mazur? On behalf of both parties, we thank all of you for your time today. Let me just make a few points. It is interesting that counsel said that our person is defined under the code. It's not two people. It's one person. What they want to do down here is take two people's recoveries and reduce them from the $500,000. There is no language down here that says that. I invited counsel to give us an analysis by looking at this. I was criticized today for not citing the code and not citing the cases. The fact of the matter is after a diligent search I have been unable to find any case that shows this kind of policy language. So I couldn't refer to a case that has the exact same policy language. But there are cases out there that talk about what is ambiguity. There are some. If you can't find them in specifically this area you can use analysis. What I think you're asking us to do is say because courts in these two cases have found this language not ambiguous this one must be ambiguous. And that's not a good logical progression. And I agree with that. I don't believe with all due respect and if I've communicated that I've done a bad job today. That is not my effort. What I'm saying is I've just spelled out how I arrived and I did in the brief as you've seen how we arrived at our $500,000 that USAA owes. But now it's my obligation on behalf of the estates to say why their analysis is wrong. And their analysis is wrong if we just stay here because this is dispositive right here. They can't deduct two people's recovery. There's nothing in their   wrong. I have a position on this and they articulated it in the brief. I have a position and Justice Hutchinson has a position that is similar apparently to my analysis that arrives at a different result. I'd like to say these are three reasonable people with three different positions. If my position can be supported by this position then our position is a reasonable one consistent with the policy. So by definition it's not clear. It's their policy. They have to be clear, concise and unambiguous. And the last thing I'd like to say is this. You know we talked a lot about ERA. What does ERA say? It says we reduce by the amounts paid not the limit of liability to anyone we protect. That's more than one person. They say cover a person and they say limit of liability but none of the numbers they want to deduct are limits of liability. $200,000 isn't the limit of liability. So ERA says if you look at the paragraph right above it says by the amounts paid. So they know how to say it but they agree this provision doesn't apply. It's funny how they're critical of me for not citing any case law or code yet they're running away from the four corners of their own contract. Thank you for your time. We're going to stand in recess to let the next group of litigants come forward. Thank you.